**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-20308-CV-ALTONAGA
MAGISTRATE JUDGE REID**

LINAKER CHARLEMAGNE,

      Petitioner,

v.

STATE OF FLORIDA,

      Respondent.

## REPORT OF MAGISTRATE JUDGE

Petitioner has filed a *pro se* Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, attacking his judgment of conviction in the Eleventh Judicial Circuit of Florida, Miami-Dade County in Case No. F09-013518A. [ECF No. 6]. For the reasons discussed below, the Amended Petition should be **DENIED**.

### I.    Relevant Background

The state charged Petitioner with the premeditated murder of William Jones and the attempted premeditated murder of Cedric Johnson on April 19, 2009. [ECF No. 12-2]. Petitioner's jury trial started on August 12, 2013. [ECF No. 11-1 at 20[1]]. A jury convicted Petitioner of both counts, finding that he possessed and discharged a firearm causing death and great bodily harm. [ECF No. 12-3]. The trial court sentenced Petitioner to life in prison with a 25-year mandatory minimum sentence on each count and ordered the sentences to run concurrently. [ECF No. 12-4].

Petitioner appealed. [ECF No. 13-1]. The Third District Court of Appeals ("Third District") affirmed without discussion because it found "no merit in the points raised . . . on [] appeal." [*Id.*

---

[1] All citations to ECF entries refer to the page-stamp number at the top, right-hand corner of the page.

at 2]. However, the Third District reversed in part with directions for the trial court to run petitioner's sentences consecutively. [*Id.* at 2-3]. The Florida Supreme Court quashed the Third District's decision regarding reversing the sentences and remanded to the Third District for reconsideration. [ECF No. 13-15]. On remand, the Third District affirmed Petitioner's concurrent life sentences with 25-year mandatory minimums. [ECF No. 13-16].

Petitioner filed an amended motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850. [ECF No. 14-1]. The trial court denied the motion in a written decision. [ECF No. 14-5]. The Third District affirmed. [ECF No. 14-8]. The Florida Supreme Court declined jurisdiction. [ECF No. 14-3].

Petitioner timely filed his § 2254 Petition, [ECF No. 1], which he amended, [ECF No. 6]. Respondent filed a Response and supporting documentation. [ECF Nos. 10-16].[2] Petitioner filed a Reply [ECF No. 17], and this case is now ripe for adjudication.

## II. Legal Standard Under 28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2] Respondent's filing of each exhibit as a separate entry and accurate labeling of the exhibits on the docket facilitated the Undersigned's review of the record.

Under § 2254(d)(1)'s "contrary to" clause, courts may grant the writ if the state court: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under its "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413. "[C]learly established Federal law" consists of Supreme Court "precedents as of the time the state court renders its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citation and emphasis omitted).

An unreasonable application of federal law differs from an incorrect application of federal law. *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted). Under this standard, "a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Courts "apply this same standard when evaluating the reasonableness of a state court's decision under § 2254(d)(2)." *Landers v. Warden*, 776 F.3d 1288, 1294 (11th Cir. 2015) (citations omitted). That is, "[a] state court's . . . determination of the facts is unreasonable only if no fairminded jurist could agree with the state court's determination . . . ." *Holsey v. Warden, Ga. Diag. Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (citations and internal quotations omitted).

Under § 2254(d), where the decision of the last state court to decide a prisoner's federal claim contains no reasoning, federal courts must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S.

Ct. 1188, 1192 (2018). "It should then presume that the unexplained decision adopted the same reasoning." *Id.*

### III. Ineffective Assistance of Counsel Principles

To establish a claim of ineffective assistance of counsel, petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, he must show that counsel's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at 688. To prove prejudice, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is "all the more difficult" to prevail on a *Strickland* claim under § 2254(d). *Harrington*, 562 U.S. at 105. As the standards that *Strickland* and § 2254(d) create are both "highly deferential," review is "doubly" so when the two apply in tandem. *Id.* (citations and internal quotation marks omitted). Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Id.* Rather, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Petitioner has the burden of proof on his ineffectiveness claim, *see Holsey*, 694 F.3d at 1256, as well as the burden of proof under § 2254(d). *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).

### IV. Discussion

A. <u>Claim One</u>

Petitioner contends that counsel ineffectively failed to call expert witnesses to establish that the victims' hands contained gunshot residue. [ECF No. 6 at 3-4]. This testimony allegedly would have cast "doubt . . . on the State's theory of prosecution[] that both victims were unarmed,

4

and in all likelihood resulted in an acquittal." [*Id.* at 6]. Likewise, this testimony would have "cast doubt on the State's premeditation theory and supported the reasonable hypothesis that the homicide was not premediated." [ECF No. 17 at 2]. Furthermore, this testimony would have damaged Johnson's credibility, "who denied that he and Jones ever had guns." [*Id.*].

Petitioner raised this claim in his amended Rule 3.850 motion. [ECF No. 14-1 at 3]. The trial court rejected it on the grounds that: (1) trial counsel unsuccessfully attempted to elicit such information on cross-examination of another witness; and (2) the Third District rejected a related claim on appeal. [ECF No. 14-5 at 3]. In affirming, the Third District likewise appeared to reason that these issues were decided on direct appeal. [ECF No. 14-8 at 2].

However, the claim that Petitioner raised on direct appeal was analytically distinct, [ECF No. 13-1 at 12, 15-20], and counsel's attempt to elicit such information on cross-examination of the state's witness does not necessarily justify his failure to present witnesses to establish this fact. Therefore, because the state courts appeared to misconstrue this claim, the Undersigned reviews it *de novo*. *Cf. Bester v. Warden*, 836 F.3d 1331, 1337 (11th Cir. 2016) (citation omitted); *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 481 (11th Cir. 2012) (citation omitted).

In any event, this claim lacks merit. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [the Eleventh Circuit] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "If the record is not complete regarding counsel's actions, then the courts should presume that . . . what witnesses [defense counsel] presented or did not present[] [was an] act[] that some reasonable lawyer might do." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citation omitted).

Here, the record is not complete regarding why counsel did not call experts to establish that the victims' hands contained gunshot residue. This claim fails for this reason alone.

5

Furthermore, even if had counsel deficiently failed to call these witnesses, Petitioner could not show prejudice. Testimony that the victims had gunshot residue on their hands would not have impelled the inference that they had guns, and Petitioner has not adequately identified any testimony supporting this inference. *See* [ECF No. 17 at 3]. Additionally, the state presented strong evidence of Petitioner's guilt. *See infra*, Part IV(E). This evidence included the testimony of his former codefendant, who was at the scene of the shooting, as well victim Johnson's testimony that Petitioner was the shooter. *See, e.g.*, [ECF No. 10 at 2-4, 7 (citing trial transcript)]. Therefore, Petitioner has not shown a reasonable probability that the experts' testimony would have resulted in a more favorable outcome. In sum, claim one lacks merit and should be denied.

B.  Claim Two

Petitioner next argues that counsel ineffectively failed to object to several improper remarks that the prosecutor made during closing argument. [ECF No. 6 at 7-10]. In support, he contends that the prosecutor: (1) exploited excluded evidence regarding whether the victims possessed firearms; (2) touted a finding regarding gunshot residue on Petitioner's shoe as a conclusive finding that Petitioner fired a gun; (3) suggested "additional knowledge of guilt that was not shared with the jury"; (4) suggested "that the jury should trust the State's judgment rather than their own view of the evidence"; (5) vouched for a witness's credibility; (6) attacked a "straw man alibi defense" when Petitioner's "defense was misidentification"; and (7) shifted the burden of proof to Petitioner. [*Id.* at 7-9].

Petitioner raised this claim in his amended Rule 3.850 motion. [ECF No. 14-1 at 20]. The trial rejected it, pertinently finding that "each of the improper comments was raised as an issue on direct appeal" and "dismissed . . . as meritless." [ECF No. 14-5 at 5]. The Third District affirmed, reasoning that Petitioner could not show prejudice because it found on direct appeal that these

6

remarks were not fundamental error. [ECF No. 14-8 at 2 (citing *Chandler v. State*, 848 So. 2d 1031, 1046 (Fla. 2003))].

However, to show prejudice under *Strickland*, Petitioner must show a reasonable probability of a more favorable outcome absent counsel's deficiency. By contrast, a prosecutor's improper remarks constitute fundamental error where they are "so prejudicial as to vitiate the entire trial." *See Chandler*, 848 So. 2d at 1046. Because this standard appears more challenging than the *Strickland* prejudice standard, the Undersigned reviews this claim *de novo*. *Cf. Owen v. Fla. Dep't of Corr.*, 686 F.3d 1181, 1201 (11th Cir. 2012) (suggesting that courts must review *Strickland* claim *de novo* if test state court applies to resolve claim "imposes a higher burden or contradicts the governing *Strickland* prejudice standard").

Here, in any event, Petitioner has not shown prejudice on this claim. *See generally Garlotte v. Fordice*, 515 U.S. 39, 46 (1995) ("[T]he habeas petitioner generally bears the burden of proof[.]"); *see also Holsey*, 694 F.3d at 1256. Before opening statements, the court instructed the jury that the state had to prove its accusation beyond a reasonable doubt and that the jury's verdict "must be based solely on the evidence, or lack of evidence, and the law." [ECF No. 11-3 at 16]. Likewise, before the jury retired to deliberate, the court instructed it that: (1) it had to follow the law set out in the instructions; (2) the case must be decided upon the evidence and the instructions; (3) its feelings regarding the lawyers should not influence its decision; and (4) its verdict must not be influenced by feelings of prejudice, bias, or sympathy. [ECF No. 16-2 at 23-24]. The jury presumably followed these instructions, *see Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and Petitioner has not meaningfully argued, much less shown, otherwise.

Furthermore, the state presented strong evidence of Petitioner's guilt. *See infra*, Part IV(E). The Third District's ruling on direct appeal that the allegedly improper remarks were not

7

fundamental error supports this finding. Thus, Petitioner has not met his burden of showing that counsel's allegedly deficient failure to object to the comments prejudiced him and claim two fails.

C.      Claim Three

Petitioner next argues that counsel ineffectively failed to "give a valid" basis for counsel's request for an instruction on justifiable use of deadly force. [ECF No. 6 at 11]. Although Petitioner admits that counsel requested such an instruction, he faults counsel for failing to "point[] to evidence to show the applicability of the instruction." [*Id.*]. Petitioner contends that the evidence warranted this instruction because former codefendant Mr. Sastre allegedly testified that "the alleged victims were acting aggressively toward [Petitioner] because they outnumbered him two against one." [*Id.* (citing ECF No. 11-4 at 28-29)].

Petitioner raised this claim in his amended Rule 3.850 motion. [ECF No. 14-1 at 24]. The trial court rejected it because: (1) counsel requested a justifiable use of deadly force instruction; and (2) on direct appeal, the Third District rejected the argument that the trial court reversibly erred in denying this instruction. [ECF No. 14-5 at 5]; *compare* [ECF No. 13-1 at 20-21 (Petitioner's argument on direct appeal)], *with* [ECF No. 13-5 at 2 (rejecting this argument)]. The Third District's affirmance does not contain any relevant reasoning. *See* [ECF No. 14-8 at 2-3].

Here, the trial court reasonably rejected this claim. Counsel asked for an instruction on justifiable use of deadly force, which the court denied because the evidence did not support this theory. [ECF No. 11-6 at 161; ECF No. 11-8 at 129]. Furthermore, contrary to Petitioner's contention, Mr. Sastre did not testify that the alleged victims were acting aggressively toward Petitioner "because they outnumbered him two against one." [ECF No. 6 at 11]. Rather, he testified, without elaboration, that he exited the car because he heard "loud arguing" and "screaming" from an unknown person(s) and that he "didn't know if [the victims] were going to

fight [Petitioner] or jump him." [ECF No. 11-4 at 28-29]. Additionally, this habeas court cannot review the trial court's state-law determination that the evidence did not warrant an instruction on justifiable deadly force. *See, e.g.*, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citation omitted); *Chamblee v. Florida*, 905 F.3d 1192, 1196-98 (11th Cir. 2018). Accordingly, there is a reasonable argument that counsel did not deficiently fail to "give a valid basis" for the instruction at issue.

In sum, the trial court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. Accordingly, this claim should be denied.

D.  Claim Four

Petitioner alleges that counsel ineffectively failed to challenge the state's race-neutral reasons for excluding black jurors as pretextual and renew this objection at the end of *voir dire* to preserve it for appeal. [ECF No. 6 at 13-15]. In support, he contends that the state struck four black jurors who "never demonstrated bias" against the state. [*Id.* at 14]. However, he contends that the state did not strike a white juror who "demonstrated bias about" the state's evidence. [*Id.*]. Therefore, he contends that the state's race-neutral reasons to defend these strikes were pretextual. [*Id.* at 13-15].

During *voir dire*, the prosecutor objected to the state's alleged "trend" of "striking all black females." [ECF No. 11-2 at 138]. The state responded that it had "not been striking just [black] females." [*Id.*]. Furthermore, regarding the stricken black juror Ms. Eldridge, the state said that: (1) she failed to disclose a crime; (2) police previously questioned her about a drug offense that she did not commit; and (3) she had a "bad experience" as a schoolteacher that the state did not fully understand. [*Id.* at 138-39]. The court found this reason to be genuine and allowed the strike.

[*Id.* at 139]. After further strikes by the state and counsel, the parties accepted the jury and counsel did not renew the *Batson*[3] objection. [*Id.* at 139-51].

Petitioner raised this claim in his amended Rule 3.850 motion. [ECF No. 14-1 at 8-9]. The trial court rejected it, reasoning that "counsel did raise appropriate challenges that the state was able to overcome. . . . [through] genuine race neutral reasons for their strikes." [ECF No. 14-5 at 6]. Further, the court reasoned that "these issues were preserved and could have been raised on direct appeal." [*Id.*]. The Third District rejected this claim, reasoning that "[a] claim that counsel was ineffective for failing to 'follow-up' on questioning to establish grounds for a for-cause challenge has been held to be legally insufficient because such a claim can be based on nothing more than conjecture by the defendant." [ECF No. 14-8 at 2 (citation omitted)].

Here, the Third District reasonably rejected this claim. The record does not indicate that further questioning or objections by counsel would have revealed that the strikes in question were pretextual. Mr. Papadopoulos, the white juror, initially stated that he could be "bias[ed] about striking a deal [with the state]," though he clarified that the bias would not influence his decision or affect his ability to be fair and impartial. [ECF No. 11-2 at 56-58]. Because the reasons for which the state struck Ms. Eldridge are considerably different than Mr. Papadopoulos's alleged bias, Petitioner has not shown that they were pretextual. *See Walls v. Buss*, 658 F.3d 1274, 1282 (11th Cir. 2011) (rejecting *Batson* claim in part because the petitioner failed to offer "a comparative analysis of jurors who the State accepted and rejected, to show that the State did not attempt to remove similarly situated nonblack jurors").

True, it is not fully clear why the prosecutor struck black juror Ms. Amie. [ECF No. 11-2 at 137]. However, Ms. Amie initially stated that, although she was a nurse, she would not like to

---

[3] *Batson v. Kentucky*, 476 U.S. 79 (1986).

10

be "involved in an emergency room or . . . trauma cases" because it would be "too much for [her]." [*Id.* at 95]. She added: "It's too much action for me. It's fast pace[d]." [*Id.*] Because the case involved a shooting causing a death and great bodily harm, it is arguable that the state was concerned about Ms. Amie's ability to be fair and impartial given her expressed disinclination for trauma cases. Petitioner will contend that counsel could have shown that this strike was pretextual had he pressed the point. Again, however, Petitioner has not shown that Ms. Amie was "similarly situated" to Mr. Papadopoulos. *See Walls*, 658 F.3d at 1282. Furthermore, "[this] claim . . . [appears to] be based on nothing more than conjecture by [Petitioner]." *See* [ECF No. 14-8 at 2 (citation omitted)]; *cf. Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.").[4]

In sum, the Third District's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. Accordingly, this claim should be denied.

E.   Claim Five

Petitioner contends that he did not receive a fair trial because, on March 1, 2015, victim Johnson signed an affidavit recanting his testimony and declaring that he identified Petitioner only because of a suggestive identification procedure. [ECF No. 6 at 16-18].

Petitioner raised this claim in his amended Rule 3.850 motion. [ECF No. 14-1 at 42-43]. The trial court held a hearing on this claim in which it took testimony from Johnson and defense counsel. [ECF No. 14-4 at 3]. The trial court rejected this claim, finding that the "testimony of []

---

[4] Petitioner has not explained how the state's strikes of the other two black jurors were pretextual. *See generally* [ECF No. 6 at 13-16; ECF No. 17 at 7-8].

Johnson at the evidentiary hearing was not credible." [ECF No. 14-5 at 7]. Pertinently, the court reasoned:

> [Johnson] is unable to explain his reason for supposedly lying at the time of the incident. He is unable to explain the independent corroboration of [Petitioner] as the shooter and he is unable to explain why he now is changing his story. His demeanor and his manner of answering the questions posed by the lawyers and the Court demonstrated a lack of trustworthiness.
>
> As the record demonstrates and as was further established at the evidentiary hearing, the evidence at trial against [Petitioner] was overwhelming. In addition to the testimony of [] Johnson, [Mr. Sastre] testified and identified [petitioner] as the shooter, there was evidence of jail phone calls between the two defendants discussing the crime, there were contemporaneous statements made to the mother of [] Johnson and police officers identifying [Petitioner] by nickname, and [] Johnson identified [petitioner] in a photo line-up only one day after the incident. In light of all the evidence at trial and in light of the inconsistencies and incredibility of . . . Johnson, . . . this newly discovered evidence, namely his recantation, would be unlikely to produce a different result on retrial.

[*Id.* at 8]; *see also* [ECF No. 10 at 2-9 (citing trial transcript)]. The Third District affirmed but did not explicitly address this claim. [ECF No. 14-8 at 2-3].

This standalone actual innocence claim fails. Eleventh Circuit "precedent forecloses habeas relief based on a prisoner's assertion that he is actually innocent of the crime of conviction absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Raulerson v. Warden*, 928 F.3d 987, 1004 (11th Cir. 2019) (citation and internal quotation marks omitted); *see also Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").

Here, Petitioner has not shown any independent constitutional violation in the state court proceeding. To the extent he argues that his conviction violated due process because it was fundamentally unfair and/or the evidence was insufficient, the strong evidence of his guilt belies

this argument. Furthermore, the trial court's rejection of this claim turned in large part on its finding that Johnson's testimony was incredible, and, "[i]n the absence of clear and convincing evidence, [courts] have no power on federal habeas review to revisit the state court's credibility determinations." *Bishop v. Warden*, 726 F.3d 1243, 1259 (11th Cir. 2013) (citations omitted). Petitioner's mere disagreement with the trial court's assessment of the strength of the state's evidence does not meet this standard.[5] Thus, claim five fails.

## V. Evidentiary Hearing

Petitioner is not entitled to an evidentiary hearing. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing [under § 2254*].");* see also Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318 (11th Cir. 2016) (petitioner not entitled to evidentiary hearing under § 2254 if fails to allege "enough specific facts that, if they were true, would warrant relief").

## VI. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. 11(a), Rules Governing § 2254 Cases. "If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." *Id.* "A timely notice of appeal must be filed even if the district court issues a certificate of appealability." R. 11(b), Rules Governing § 2254 Cases.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court

---

[5] Petitioner's contention that there was a "conflict of interest" at the evidentiary hearing on this claim does not inform the analysis. *See generally* [ECF No. 18]. Petitioner has not alleged, much less shown, how this alleged conflict might have influenced the trial court's factual findings.

rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, the Undersigned denies a certificate of appealability. If Petitioner disagrees, he may so argue in any objections filed with the District Judge.

### VII. Recommendations

As discussed above, it is **RECOMMENDED** that the Amended Petition [ECF No. 6] be **DENIED**; that no certificate of appealability issue; that final judgment be entered; and that the case be closed.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

SIGNED this 19th day of January, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Linaker Charlemagne
     M87151
     Madison Correctional Institution
     Inmate Mail/Parcels
     382 SW MCI Way
     Madison, FL 32340
     PRO SE

Jeffrey Robert Geldens
Office of the Florida Attorney General
444 Brickell Avenue, Suite 650
Miami, FL 33131
Email: jeffrey.geldens@myfloridalegal.com

Noticing 2254 SAG Miami-Dade/Monroe
Email: CrimAppMIA@MyFloridaLegal.com